**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:        ) | Case No. 20-07130 |
|        ) | Hon. Jacqueline P. Cox |
| JOSEPH C. SHEEHAN,        ) | Chapter 11 |

In re:                                                    )
                                                          )        Case No. 20-07130
JOSEPH C. SHEEHAN,                                        )        Hon. Jacqueline P. Cox
                                                          )        Chapter 11
         *Debtor/Debtor-in-Possession.*                  )
_____)
JOSEPH C. SHEEHAN,                                       )
                                                         )
         *Plaintiff*,                                    )
                                                         )        Adv. No. _____
v.                                                       )
                                                         )
DAMIEN MURRAN; RSM IRELAND                               )
BUSINESS ADVISORY LIMITED t/a RSM                        )
IRELAND; BRECCIA UNLIMITED COMPANY; )
and IRISH AGRICULTURAL DEVELOPMENT )
COMPANY UNLIMITED,                                       )
                                                         )
         *Defendants*.                                   )
_____)

**ADVERSARY COMPLAINT FOR TURNOVER OF PROPERTY OF THE ESTATE,
AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, AVOIDANCE
AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFERS, TO
ENFORCE THE AUTOMATIC STAY AND FOR RELATED RELIEF**

JOSEPH C. SHEEHAN, Debtor/Debtor-in-Possession and Plaintiff herein (the "Debtor"),

hereby submits his Adversary Complaint for Turnover of Property of the Estate, Avoidance and

Recovery of Fraudulent Transfers, Avoidance and Recovery of Unauthorized Post-Petition

Transfers, to Enforce the Automatic Stay and for Related Relief, pursuant to 11 U.S.C. §§ 105(a),

362, 502, 542, 543, 548, 549 and 550, against Defendants, DAMIEN MURRAN, RSM IRELAND

BUSINESS ADVISORY LIMITED t/a/ RSM IRELAND, BRECCIA UNLIMITED COMPANY

and IRISH AGRICULTURAL DEVELOPMENT COMPANY UNLIMITED, and in support

thereof, respectfully states as follows:

1

## JURISDICTION AND VENUE

1.      This adversary proceeding seeks the entry of an Order: (i) directing turnover of property of the estate under sections 542 and 543 of title 11 of the United States Code (the "Bankruptcy Code"); (ii) authorizing the avoidance and recovery of unauthorized post-petition transfers pursuant to sections 549 and 550 of the Bankruptcy Code; (iii) authorizing the avoidance and recovery of fraudulent transfers under sections 548 and 550 of the Bankruptcy Code; (iv) enforcing the automatic stay; (v) declaring that actions of the various defendants taken in violation of section 362 of the Bankruptcy Code are void *ab initio*; (vi) awarding actual and punitive damages for violations of the automatic stay under section 362 of the Bankruptcy Code; and (vii) disallowing any and all claims of the defendants in the Debtor's Chapter 11 case.

2.      This adversary proceeding arises under the Bankruptcy Code, in relation to the Chapter 11 bankruptcy case currently pending in the United States Bankruptcy Court for the Northern District of Illinois commonly referred to as *In re Joseph C. Sheehan*, case no. 20-07130 (the "Bankruptcy Case").

3.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

4.      This adversary proceeding constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(A), (B), (E), (H) and (O), and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

5.      Venue is proper in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1409.

## PARTIES

6.      On March 12, 2020 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the Bankruptcy Case.

7.      The Debtor is managing his financial affairs as Debtor-in-Possession.

8.      No trustee, examiner or committee of unsecured creditors has been appointed to serve in the Bankruptcy Case.

9.      Defendant, Damien Murran ("Murran") is an individual who, on information and belief, resides in the Republic of Ireland.

10.     Defendant, RSM Ireland Business Advisory Limited ("RSM Ireland") is, on information and belief, a limited company trading as "RSM Ireland" organized under the laws of the Republic of Ireland with its principal place of business located in Dublin, Republic of Ireland.

11.     RSM Ireland is the employer of Murran.

12.     Defendant, Breccia Unlimited Company ("Breccia") is, on information and belief, a private unlimited company organized pursuant to the laws of the Republic of Ireland with its principal place of business located in Dublin, Republic of Ireland.

13.     Defendant, Irish Agricultural Company Unlimited ("Irish Agricultural") is, on information and belief, a private unlimited company organized pursuant to the laws of the Republic of Ireland with its principal place of business located in Milestown, Castlebellingham, County Louth, Republic of Ireland.

## BACKGROUND FACTS

14.     The Debtor is a 74 year-old man who immigrated to the United States from the Republic of Ireland several decades ago. The Debtor is a citizen of the United States of America and resides in Winfield, Illinois.

3

15.    The Debtor is a retired surgeon who now draws on social security benefits as his sole regular source of financial support.

**The Blackrock Shares**

16.    As of the Petition Date, the Debtor owned an approximate 28% equity interest in Blackrock Hospital Limited (the "Blackrock Shares").

17.    Blackrock Hospital Limited is a private limited company organized pursuant to the laws of the Republic of Ireland.

18.    As of the Petition Date, Blackrock Hospital Limited was the sole owner of the Blackrock Clinic, a private teaching hospital in Dublin, Republic of Ireland.

19.    As of the Petition Date, Breccia claimed a security interest in the Blackrock Shares which purportedly secured an indebtedness in the approximate aggregate amount of €13,222,594.

20.    Breccia acquired its position with respect to the Blackrock Shares pursuant to an *Order (I) Approving the Sale of Blackrock Loan Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) Approving the Form and the Manner of Sale Notices, and (III) Granting Related Relief* entered on November 21, 2014 by Hon. Christopher S. Sontchi of the United States Bankruptcy Court for the District of Delaware in the Chapter 15 case commonly referred to as *In re Irish Bank Resolution Corporation Limited (In Special Liquidation)*, Bankr. Del. case no. 13-12159 [Dkt. Nos. 449 & 465](the "Breccia Loan Acquisition").

**The Blackrock Receivership**

21.    On December 5, 2019, Breccia sent a letter to the Debtor demanding immediate payment of its acquired secured claim against the Debtor in the aggregate amount of €13,222,594. A true and accurate copy of the December 5, 2019 correspondence from Breccia to the Debtor is attached hereto as **Exhibit A**.

4

22.     On December 12, 2019, at the direction of Breccia, Murran and RSM Ireland (Murran and RSM Ireland are hereinafter referred to collectively as the "Receiver") were appointed as receiver and manager of the Blackrock Shares (the "Blackrock Receivership"). A true and accurate copy of correspondence from the Receiver to the Debtor dated December 16, 2019, advising of the commencement of the Blackrock Receivership is attached hereto as **Exhibit B**.

23.     Murran performs his function as receiver and manager of the Blackrock Shares in the Blackrock Receivership under the masthead and as an employee of RSM Ireland. (*See, e.g.* correspondence from the Receiver to the Debtor, at **Exhibits B & K**).

24.     Murran performs his function as receiver and manager of the Blackrock Shares with the assistance of other employees of RSM Ireland.

25.     At all relevant times following the Receiver's appointment through the Petition Date, the Debtor was the owner of the Blackrock Shares.

26.     Prior to the Petition Date, the Receiver lacked any legal basis to assert any ownership interest in the Blackrock Shares.

27.     Prior to the Petition Date, the Receiver lacked any factual basis to assert any ownership interest in the Blackrock Shares.

28.     One of the purposes of the Blackrock Receivership was to liquidate and maximize the value of the Blackrock Shares.

29.     Prior to the Petition Date, the Receiver commenced a process to market and sell the Blackrock Shares.

30.     The value of the Blackrock Shares as of the Petition Date, was an amount in excess of €40,000,000.

31.    As the owner of the Blackrock Shares, the Debtor is entitled to the Blackrock Shares, the value thereof, and, at a minimum, following any sale of the Blackrock Shares, and payment of reasonable costs related to such sale, the Debtor is entitled to any excess funds generated after the payment of any allowed secured claim of Breccia.

32.    At various times subsequent to December 17, 2019, the Debtor attempted to obtain information from the Receiver relating to the Blackrock Receivership and the Receiver's efforts to market the Blackrock Shares for sale, including, but not limited to information relating to: (i) the identity of any bidders for the Blackrock Shares; (ii) the amounts of bids received for the Blackrock Shares; and (iii) the details of the Receiver's process for marketing and selling the Blackrock Shares.

33.    The Debtor's requests for information relating to the Blackrock Receivership and the prospective sale of the Blackrock Shares received no meaningful response from the Receiver and his counsel.

**The Ballyheigue Property**

34.    As of the Petition Date, the Debtor owned certain real estate located at St. Joseph's, Ballyheigue, County Kerry, Republic of Ireland (the "Ballyheigue Property").

35.    As of the Petition Date, Breccia claimed a security interest in the Ballyheigue Property which purportedly secured an indebtedness in an amount that is presently unknown to the Debtor.

36.    Breccia acquired its position with respect to the Ballyheigue Property via the Breccia Loan Acquisition.

**The Commencement of the Bankruptcy Case**

37.    On March 12, 2020, the Debtor filed his Bankruptcy Case.

6

38.    The commencement of the Bankruptcy Case created an estate "comprised of all …

property, wherever located and by whomever held" including, but not limited to, "all legal or

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §

541(a).

39.    As of the Petition Date,  the Debtor's ownership interest in the Blackrock Shares

was included in property of the Debtor's estate.

40.    As of the Petition Date, the Debtor's ownership interest in the Ballyheigue Property

was included in property of the Debtor's estate.

41.    The commencement of the Bankruptcy Case "operates as a stay, applicable to all

entities", as of the Petition Date, of the following acts:

> (1)    **the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title**;

> (2)    the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3)    **any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;**

> (4)    **any act to create, perfect, or enforce any lien against property of the estate**;

> (5)    **any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title**;

> (6)    **any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title**;

(7)     **the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor**; and

(8)     the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a) (emphasis added).

*The Receiver Immediately Receives Notice of the Filing of the Bankruptcy Case*

42.     On the Petition Date, immediately upon the filing of the Bankruptcy Case, counsel for the Debtor sent correspondence to counsel for the Receiver: (i) advising of the filing of the Bankruptcy Case; (ii) advising of the creation of the Debtor's estate pursuant to 11 U.S.C. § 541(a); (iii) advising of the imposition of the automatic stay pursuant to 11 U.S.C. § 362; and (iv) inviting a discussion over telephone or e-mail regarding the Bankruptcy Case. A true and accurate copy of the March 12, 2020 letter from the Debtor to the Receiver is attached hereto as **Exhibit C**.

43.     On March 13, 2020, counsel for the Receiver responded to the March 12, 2020 correspondence from the Debtor's counsel, wherein the Receiver, among other things: (i) acknowledged receipt of the March 12, 2020 letter from the Debtor's counsel; and (ii) stated the Receiver's intention that, notwithstanding the filing of the Bankruptcy Case, the Receiver would "continue to carry out his duties and function as Receiver." A true and accurate copy of the March 13, 2020 letter from the Receiver's counsel to the Debtor's counsel is attached hereto as **Exhibit D**.

44.     On March 25, 2020, counsel for the Debtor sent an e-mail to counsel for the Receiver, wherein counsel for the Debtor, among other things: (i) requested "all information regarding the receiver's marketing efforts for the [Blackrock Shares], the results of such marketing

efforts and a status report concerning the sale thereof."; (ii) reiterated the imposition of the automatic stay pursuant to 11 U.S.C. § 362(a) and the effect thereof; and (iii) requested a conference call with counsel for the Receiver on a mutually acceptable date and time. A true and accurate copy of the March 25, 2020 e-mail from counsel for the Debtor to counsel for the Receiver is attached hereto as **Exhibit E**.

45.     On March 26, 2020, counsel for the Receiver sent counsel for the Debtor an e-mail in response to the March 25, 2020 e-mail, wherein counsel for the Receiver, among other things: (i) refused to provide any additional information relating to the Blackrock Shares; (ii) stated that the automatic stay of 11 U.S.C. § 362 has no impact on the Receiver; and (iii) refused to confer via telephone with counsel for the Debtor. A true and accurate copy of the March 26, 2020 e-mail from counsel for the Receiver to counsel for the Debtor is attached hereto as **Exhibit F**.

46.     On March 26, 2020, counsel for the Debtor sent an e-mail to counsel for the Receiver in response his email dated March 26, 2020, wherein counsel for the Debtor, among other things: (i) reiterated the imposition of the automatic stay; (ii) advised that all actions taken by the Receiver after the filing of the Debtor's Bankruptcy Case are void; and (iii) requested a full accounting of the Blackrock Receivership and a report of sale from the Receiver. A true and accurate copy of the March 26, 2020 e-mail from counsel for the Debtor to counsel for the Receiver is attached hereto as **Exhibit G**.

47.     Neither the Receiver nor his counsel responded to the March 26, 2020 e-mail from counsel for the Debtor.

48.     The Receiver has never provided the Debtor with an accounting of the Blackrock Receivership.

9

*Breccia and Irish Agricultural Receive Notice of the Bankruptcy Case*

49.     On March 18, 2020, counsel for the Debtor sent correspondence to counsel for Breccia and Irish Agricultural advising of: (i) the filing of the Bankruptcy Case; (ii) the creation of the Debtor's estate pursuant to 11 U.S.C. § 541(a); and (iii) the imposition of the automatic stay pursuant to 11 U.S.C. § 362. A true and accurate copy of the March 18, 2020 letter is attached hereto as **Exhibit H**.

50.     On April 2, 2020, counsel for Breccia and Irish Agricultural sent correspondence directly to the Debtor, wherein, among other things, counsel for Breccia and Irish Agricultural confirmed receipt of the Debtor's March 18, 2020 correspondence. A true and accurate copy of the April 2, 2020 correspondence from counsel for Breccia and Irish Agricultural to the Debtor is attached hereto as **Exhibit I**.

51.     On April 2, 2020, counsel for the Debtor responded to the April 2, 2020 correspondence from Breccia and Irish Agricultural, wherein, among other things, counsel for the Debtor: (i) attached a copy of the Debtor's Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code filed on the Petition Date; (ii) reiterated that the Blackrock Shares were property of the Debtor's estate under 11 U.S.C. § 541; (iii) reiterated that the automatic stay prohibited any action with respect to the Blackrock Shares; (iv) demanded that Breccia cease and desist from further collection efforts; and (v) demanded that Irish Agricultural immediately turn over the Blackrock Shares. A true and accurate copy of the April 2, 2020 correspondence from counsel for the Debtor to counsel for Breccia and Irish Agricultural is attached hereto as **Exhibit J**.

*The Receiver Sells the Blackrock Shares After the Petition Date, With Actual Notice of the Bankruptcy Case*

52.     After the Petition Date, the Receiver contracted to sell the Blackrock Shares to Irish Agricultural for the sale price of approximately €20,300,000.00.

53.    The fact that the sale of the Blackrock Shares occurred after the Petition Date was confirmed by the Receiver's counsel in an e-mail dated March 26, 2020, wherein counsel for the Receiver stated: "I confirmed that the laws of Illinois had no effect in this jurisdiction in my letter of 13 March 2020 and that the receiver would continue to carry out his duties. That letter pre-dated the sale of the shares". **Ex. F**.

54.    The fact that the sale of the Blackrock Shares occurred after the Petition Date was confirmed by counsel for Breccia and Irish Agricultural in a letter dated April 2, 2020, wherein counsel for Breccia and Irish Agricultural stated: "the receiver sold your shares in Blackrock Hospital Limited on 13 March 2020". **Ex. I**.

55.    On information and belief, the Receiver agreed to the sale of the Blackrock Shares to Irish Agricultural for the price of approximately €20,300,000.00 notwithstanding that the Receiver had received a competing bid for the Blackrock Shares from a different bidder in excess of €40,000,000.00.

56.    On information and belief, an indirect majority interest of both Breccia and Irish Agricultural is owned by a common owner.

57.    The Receiver agreed to a sale price for the Blackrock Shares to an insider of Breccia of at least €19,000,000.00 less than the highest bid received by the Receiver for the purchase of the Blackrock Shares.

58.    On March 25, 2020, with notice of the Bankruptcy Case and the imposition of the automatic stay, the Receiver directly contacted the Debtor to advise of the sale of the Blackrock Shares to Irish Agricultural and to request additional information of the Debtor relating to the Blackrock Shares in order "to progress matters in the [Blackrock] Receivership". A true and

accurate copy of the March 25, 2020 correspondence from the Receiver to the Debtor is attached hereto as **Exhibit K**.

*The Receiver and Breccia Move Forward with a New Receivership Relating to the Ballyheigue Property After the Petition Date, With Actual Notice of the Bankruptcy Case*

59. On or around March 5, 2020, without notice to the Debtor, Breccia appointed Murran and RSM Ireland as the receiver of the Ballyheigue Property.

60. On or around March 23, 2020 – after the Petition Date, and with actual notice of the Bankruptcy Case – the Receiver accepted the appointment to serve as receiver of the Ballyheigue Property (the receivership of the Ballyheigue Property is hereinafter referred to as the "Bellyheigue Receivership"). A true and accurate copy of correspondence from the Receiver to the Debtor dated April 7, 2020 confirming the commencement of the Ballyheigue Receivership is attached hereto as **Exhibit L**.

61. Murran performs his function as receiver of the Ballyheigue Property under the masthead and as an employee of RSM Ireland. (*See* **Ex. L**).

62. Murran performs his function as receiver of the Ballyheigue Property with the assistance of other employees of RSM Ireland.

63. The Debtor had no notice of the Ballyheigue Receivership prior to April 7, 2020.

64. On April 7, 2020, the Debtor became aware that, without notice to the Debtor or permission from the Debtor, Mark Crowley ("Crowley") forced entry to the Ballyheigue Property and changed the locks to the residence located on the Ballyheigue Property.

65. On April 7, 2020, Crowley was an employee of RSM Ireland.

66. Immediately after the Debtor received notice that Crowley entered the Ballyheigue Property and changed the locks to the residence at the Ballyheigue Property, counsel for the Debtor

placed a telephone call to Crowley in an effort to advise Crowley of the pendency of the Debtor's Bankruptcy Case and to obtain additional information regarding the basis for Crowley's actions.

67.    Crowley did not personally return the telephone call from counsel for the Debtor or otherwise respond to counsel for the Debtor.

68.    On April 7, 2020, after the telephone call to Crowley by Debtor's counsel, with notice of the Bankruptcy Case and the imposition of the automatic stay, the Receiver directly contacted the Debtor to, among other things: (i) advise the Debtor of the commencement of the Ballyheigue Receivership; (ii) request information and documentation from the Debtor relating to the Ballyheigue Property; (iii) advise that the Receiver's function "is to take possession of and secure the property to which he has been appointed to collect rental income, to sell them and to apply the proceeds of the sale in discharge of the borrower's obligations; and (iv) identify Crowley as an additional contact relating to the Ballyheigue Receivership. **Ex. L.**

69.    On April 7, 2020, counsel for the Receiver – the same attorney representing the Receiver in the Blackrock Receivership – e-mailed counsel for the Debtor to advise that he was also representing the Receiver with respect to the Ballyheigue Receivership. A true and accurate copy of the April 7, 2020 email from counsel for the Receiver to counsel for the Debtor is attached hereto as **Exhibit M**.

70.    On April 7, 2020, counsel to the Debtor e-mailed counsel for the Receiver, wherein counsel for the Debtor, among other things: (i) reiterated that the Debtor had commenced the Bankruptcy Case prior to the commencement of the Ballyheigue Receivership; (ii) stated that the Ballyheigue Property is property of the Debtor's estate under 11 U.S.C. § 541; (iii) stated that the automatic stay prohibits any action with respect to the Ballyheigue Property; (iv) demanded that the Receiver cease and desist from any further efforts to exercise control over the Ballyheigue

13

Property; (v) demanded that the Receiver immediately turnover the keys to the new locks to the residence at the Ballyheigue Property; and (vi) renewed the Debtor's request for documents and information and a telephone conference to attempt to resolve disputes between the Debtor and the Receiver. A true and accurate copy of the April 7, 2020 e-mail from counsel for the Debtor to counsel for the Receiver is attached hereto as **Exhibit N**.

71.     On April 8, 2020, counsel for the Receiver responded to the April 7, 2020 e-mail from counsel for the Debtor, wherein, counsel for the Receiver, among other things: (i) confirmed that the Receiver forced entry to the Ballyheigue Property without the Debtor's permission on April 7, 2020; (ii) confirmed that the Ballyheigue Receivership did not commence until after the Petition Date, on March 23, 2020; (iii) rejected the requests of counsel for the Debtor for documents and information and to have a telephone conference with the goal of resolving issues between the Debtor and the Receiver. A true and accurate copy of the April 8, 2020 e-mail from counsel for the Receiver to counsel for the Debtor is attached hereto as **Exhibit O**.

72.     On April 8, 2020, counsel for the Debtor sent an e-mail to counsel for Breccia, wherein, counsel for the Debtor, among other things: (i) reiterated that the Debtor had commenced the Bankruptcy Case prior to the commencement of the Ballyheigue Receivership; (ii) stated that the Ballyheigue Property is property of the Debtor's estate under 11 U.S.C. § 541; (iii) stated that the automatic stay prohibits any action with respect to the Ballyheigue Property; (iv) demanded that Breccia dissolve the Ballyheigue Receivership and discontinue any further attempts to enforce its purported claims against the Debtor outside of this Court; (v) demanded that Breccia immediately facilitate the turnover of the Ballyheigue Property to the Debtor; and (vi) renewed the Debtor's request for a telephone conference to attempt to resolve disputes between the Debtor and

Breccia. A true and accurate copy of the April 8, 2020 e-mail from counsel for the Debtor to

counsel for the Receiver is attached hereto as **Exhibit P**.

73. Neither Breccia nor its counsel responded to the April 8, 2020 e-mail from counsel

for the Debtor.

**COUNT 1 – TURNOVER OF PROPERTY BY A CUSTODIAN**
*11 U.S.C. § 543 & 105(a)*
**(Against Murran and RSM Ireland, pled in the alternative to Counts 2 and 4)**

74. The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this

Complaint as this paragraph 74 of this Count 1.

75. Section 543(a) of the Bankruptcy Code provides:

> A custodian with knowledge of the commencement of a case under
> this title may not make any disbursement from, or take any action in
> the administration of, property of the debtor, proceeds, product,
> offspring, rents , or profits of such property, or property of the estate,
> in the possession, custody, or control of such custodian, except such
> action as is necessary to preserve such property.

11 U.S.C. § 543(a).

76. Section 543(b) of the Bankruptcy Code provides, that a custodian shall:

> (1)    deliver to the trustee any property of the debtor held by or
> transferred to such custodian, or proceeds, product, offspring, rents,
> or profits of such property, that is in such custodian's possession,
> custody, or control on the date that such custodian acquires
> knowledge of the commencement of the case; and

> (2)    file an accounting of any property of the debtor, or proceeds,
> product, offspring, rents, or profits of such property, that, at any
> time, came into the possession, custody, or control of such
> custodian.

11 U.S.C. § 543(b).

77. Section 101(11) of the Bankruptcy Code defines a "custodian" as:

> (A)    receiver or trustee of any of the property of the debtor,
> appointed in a case or proceeding not under this title;

15

(B)     assignee under a general assignment for the benefit of the debtor's creditors; or

(C)     trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101(11).

78.     Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

79.     Property of the estate includes, with limited exceptions, all property of the debtor, "wherever located and by whomever held". 11 U.S.C. § 541(a).

80.     The Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

81.     The Ballyheigue Property is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

82.     The Receiver is a "custodian" within the meaning of sections 101(11) and 543 of the Bankruptcy Code.

83.     As of the Petition Date, the Receiver was in possession of the Blackrock Shares.

84.     The Receiver has failed and refused to deliver the Blackrock Shares to the Debtor.

85.     Pursuant to 11 U.S.C. § 543(b)(1), the Receiver is required to deliver the Blackrock Shares to the Debtor.

86.     To the extent that the Receiver is no longer in possession of the Blackrock Shares, pursuant to 11 U.S.C. § 543(b)(1), the Debtor is entitled to turnover of the proceeds, product, offspring, rents, or profits of the Blackrock Shares from the Receiver.

87.     The Receiver took possession of the Ballyheigue Property after the Petition Date.

88.     The Receiver has failed and refused to deliver the Ballyheigue Property to the Debtor.

89.     Pursuant to 11 U.S.C. § 543(b)(1), the Receiver is required to deliver the Ballyheigue Property to the Debtor.

90.     To the extent that the Receiver is no longer in possession of the Ballyheigue Property, pursuant to 11 U.S.C. § 543(b)(1), the Debtor is entitled to turnover of the proceeds, product, offspring, rents, or profits of the Blackrock Shares from the Receiver.

91.     Additionally, pursuant to 11 U.S.C. § 543(b)(2), the Receiver is required to file an accounting of any property of the Debtor, or proceeds, product, offspring, rents or profits of such property, that, at any time, came into the possession custody, or control of the Receiver.

92.     Pursuant to section 105(a) of the Bankruptcy Code, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

93.     The turnover provisions of the Bankruptcy Code are mandatory and self-effectuating.

94.     The Receiver's refusal to deliver the Blackrock Shares to the Debtor is unjustified and without excuse from this Court under 11 U.S.C. § 362(d).

95.     The Receiver's refusal to deliver the Ballyheigue Property to the Debtor is unjustified and without excuse from this Court under 11 U.S.C. § 362(d).

17

96.     Pursuant to 11 U.S.C. § 105(a), this Court may impose sanctions against the Receiver for its unjustified and unexcused refusal to comply with the turnover provisions of 11 U.S.C. § 543.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment: (i) pursuant to 11 U.S.C. § 543(b)(1), requiring Murran and RSM Ireland to turnover the Blackrock Shares to the Debtor; (ii) pursuant to 11 U.S.C. § 543(b)(1), requiring Murran and RSM Ireland, to the extent they are not in possession of the Blackrock Shares, to turnover all proceeds, product, offspring, rents, or profits of the Blackrock Shares to the Debtor; (iii) pursuant to 11 U.S.C. § 543(b)(1), requiring Murran and RSM Ireland to turnover the Ballyheigue Property to the Debtor; (iii) pursuant to 11 U.S.C. § 543(b)(1), requiring Murran and RSM Ireland, to the extent they are not in possession of the Ballyheigue Property, to turnover all proceeds, product, offspring, rents, or profits of the Ballyheigue Property to the Debtor; (v) pursuant to 11 U.S.C. § 543(b)(2), requiring Murran and RSM Ireland to file an accounting of any property of the debtor, or proceeds, product, offspring, rents or profits of such property, that, at any time, came into the possession custody, or control of Murran and/or RSM Ireland; (vi) pursuant to 11 U.S.C. § 105(a), issuing sanctions against Murran and RSM Ireland in an amount of not less than the fees and costs incurred in bringing this litigation, plus punitive damages; and (vii) granting such other and further relief as this Court deems appropriate under the circumstances.

**COUNT 2 – TURNOVER OF PROPERTY OF THE ESTATE**
*11 U.S.C. § 542 & 105(a)*
**(Against Murran and RSM Ireland, pled in the alternative to Counts 1 and 4)**

97.     The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this Complaint as this paragraph 97 of this Count 2.

98.     To the extent that the Receiver is not a "custodian" within the meaning of 11 U.S.C.

§ 101(11), the provisions of 11 U.S.C. § 543 are not applicable.

99.     Section 542(a) of the Bankruptcy Code provides, in relevant part:

> [A]n entity, other than a custodian, in possession, custody, or control
> during the case, of property that the trustee may use, sell, or lease
> under section 363 [of the Bankruptcy Code] … shall deliver to the
> trustee, and account for, such property or the value of such property.

11 U.S.C. § 542(a).

100.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of,

subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement

of the case." 11 U.S.C. § 541(a)(1).

101.    Property of the estate includes, with limited exceptions, all property of the debtor,

"wherever located and by whomever held". 11 U.S.C. § 541(a).

102.    The Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to

11 U.S.C. § 541.

103.    As of the Petition Date, the Receiver was in possession of the Blackrock Shares.

104.    The Receiver has failed and refused to deliver the Blackrock Shares to the Debtor.

105.    To the extent that the provisions of 11 U.S.C. § 543 do not apply to the Receiver,

the Debtor is entitled to turnover of the Blackrock Shares from the Receiver pursuant to 11 U.S.C.

§ 542(a).

106.    Additionally, to the extent that the provisions of 11 U.S.C. § 543 do not apply to

the Receiver, the Receiver shall account for the Blackrock Shares or the value of the Blackrock

Shares pursuant to 11 U.S.C. § 542(a).

107.    The Ballyheigue Property is property of the Debtor's bankruptcy estate pursuant to

11 U.S.C. § 541.

108.   The Receiver is in possession of the Ballyheigue Property.

109.   The Receiver has failed and refused to deliver the Ballyheigue Property to the Debtor.

110.   To the extent that the provisions of 11 U.S.C. § 543 do not apply to the Receiver, the Debtor is entitled to turnover of the Ballyheigue Property from the Receiver pursuant to 11 U.S.C. § 542(a).

111.   Additionally, to the extent that the provisions of 11 U.S.C. § 543 do not apply to the Receiver, the Receiver shall account for the Ballyheigue Property or the value of the Ballyheigue Property pursuant to 11 U.S.C. § 542(a).

112.   The turnover provisions of the Bankruptcy Code are mandatory and self-effectuating.

113.   The Receiver's refusal to deliver the Blackrock Shares to the Debtor is unjustified.

114.   The Receiver's refusal to deliver the Ballyheigue Property to the Debtor is unjustified.

115.   Pursuant to 11 U.S.C. § 105(a), this Court may impose sanctions against the Receiver for its unjustified refusal to comply with the turnover provisions of 11 U.S.C. § 542.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of an Order: (i) pursuant to 11 U.S.C. § 542(a), requiring Murran and RSM Ireland to turn over the Blackrock Shares to the Debtor or entering judgment in favor of the Debtor for the value of the Blackrock Shares; (ii) pursuant to 11 U.S.C. § 542(a), requiring Murran and RSM Ireland to account for the Blackrock Shares or the value of the Blackrock Shares; (iii) pursuant to 11 U.S.C. § 542(a), requiring Murran and RSM Ireland to turn over the Ballyheigue Property to the Debtor or entering judgment in favor of the Debtor for the value

thereof; (iv) pursuant to 11 U.S.C. § 542(a), requiring Murran and RSM Ireland to account for the Ballyheigue Property or the value of the Ballyheigue Property; (v) pursuant to 11 U.S.C. § 105(a), issuing sanctions against Murran and RSM Ireland in an amount of not less than the fees and costs incurred in bringing this litigation, plus punitive damages; and (vi) granting such other and further relief as this Court deems appropriate under the circumstances.

### COUNT 3 – TURNOVER OF PROPERTY OF THE ESTATE
*11 U.S.C. §§ 542 & 105(a)*
**(Against Irish Agricultural, pled in the alternative to Counts 5 and 7)**

116.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this Complaint as this paragraph 116 of this Count 3.

117.    Section 542(a) of the Bankruptcy Code provides, in relevant part:

> [A]n entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 [of the Bankruptcy Code] … shall deliver to the trustee, and account for, such property or the value of such property.

11 U.S.C. § 542(a).

118.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

119.    Property of the estate includes, with limited exceptions, all property of the debtor, "wherever located and by whomever held". 11 U.S.C. § 541(a).

120.    The Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

121.    On information and belief, Irish Agricultural has taken possession of the Blackrock Shares after the Petition Date.

122.   Irish Agricultural has failed and refused to deliver the Blackrock Shares to the Debtor.

123.   The Debtor is entitled to turnover of the Blackrock Shares from Irish Agricultural pursuant to 11 U.S.C. § 542(a).

124.   Irish Agricultural shall account for the Blackrock Shares or the value of the Blackrock Shares pursuant to 11 U.S.C. § 542(a).

125.   The turnover provisions of the Bankruptcy Code are mandatory and self-effectuating.

126.   Irish Agricultural's refusal to deliver the Blackrock Shares to the Debtor is unjustified.

127.   Pursuant to 11 U.S.C. § 105(a), this Court may impose sanctions against Irish Agricultural for its unjustified refusal to comply with the turnover provisions of 11 U.S.C. § 542.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Irish Agricultural: (i) pursuant to 11 U.S.C. § 542(a), requiring Irish Agricultural to turn over the Blackrock Shares to the Debtor or entering judgment in favor of the Debtor for the value of the Blackrock Shares; (ii) pursuant to 11 U.S.C. § 542(a), requiring Irish Agricultural to account for the Blackrock Shares or the value of the Blackrock Shares; (iii)  pursuant to 11 U.S.C. § 105(a), issuing sanctions against Irish Agricultural in an amount of not less than the fees and costs incurred in bringing this litigation, plus punitive damages; and (iv) granting such other and further relief as this Court deems appropriate under the circumstances.

## COUNT 4 – AVOIDANCE AND RECOVERY OF
## UNAUTHORIZED POST-PETITION TRANSFER
*11 U.S.C. §§ 549 and 550*
**(Against Murran and RSM Ireland, pled in the alternative to Counts 1 and 2)**

128.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this Complaint as this paragraph 128 of this Count 4.

129.    Section 549(a) of the Bankruptcy Code provides that the Debtor "may avoid a transfer of property of the estate … that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B).

130.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

131.    Property of the estate includes, with limited exceptions, all property of the debtor, "wherever located and by whomever held". 11 U.S.C. § 541(a).

132.    The Ballyheigue Property is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

133.    The Receiver forced entry into the Ballyheigue Property, without the consent of the Debtor, after the Petition Date.

134.    The Receiver changed the locks to the residence located on the Ballyheigue Property after the Petition Date.

135.    By forcing entry to the Ballyheigue Property and changing the locks to the residence on the Ballyheigue Property without the consent of the Debtor, the Receiver exercised possession, custody and/or control over the Ballyheigue Property.

136.    The Receiver's exercise of possession, custody and/or control over the Ballyheigue Property without the consent of the Debtor constitutes a transfer of property of the debtor's bankruptcy estate.

137.    The transfer of the Ballyheigue Property to the Receiver was not authorized by any provision of the Bankruptcy Code.

138.    The transfer of the Ballyheigue Property to the Receiver was not authorized by this Court.

139.    Based upon the foregoing, the Debtor is entitled to an order and judgment against the Receiver pursuant to 11 U.S.C. § 549 avoiding any transfer of the Ballyheigue Property to the Receiver that occurred after the Petition Date.

140.    Pursuant to section 550(a) of the Bankruptcy Code, the Debtor "may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from –":

> (1)     the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)     any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

141.    The Receiver was the initial transferee of the Ballyheigue Property or the immediate or mediate transferee of such initial transferee or person for whose benefit the transfer of the Ballyheigue Property was made.

142.    Based upon the foregoing, the Debtor is entitled to an order and judgment against the Receiver to recover the Ballyheigue Property or the value of the Ballyheigue Property, plus (i)

pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and; (ii) the attorneys' fees and costs of this action.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against the Receiver: (i) avoiding the transfer of the Ballyheigue Property to the Receiver; (ii) directing Receiver to return the Ballyheigue Property or entering the judgment for the value of the Ballyheigue Property to the Debtor; (iii) assessing pre-and post-judgment interest from the date of the transfer at the maximum legal rate and to the fullest extent allowed under applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and (iv) granting such other and further relief as this Court deems appropriate under the circumstances.

### COUNT 5 – AVOIDANCE AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFER
*11 U.S.C. §§ 549 and 550*
**(Against Irish Agricultural, pled in the alternative to Counts 3 and 7)**

143.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this Complaint as this paragraph 143 of this Count 5.

144.    Section 549(a) of the Bankruptcy Code provides that the Debtor "may avoid a transfer of property of the estate … that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B).

145.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

146.    Property of the estate includes, with limited exceptions, all property of the debtor, "wherever located and by whomever held". 11 U.S.C. § 541(a).

147.    The Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

148.    The Receiver sold the Blackrock Shares to Irish Agricultural for the sale price of approximately €20,300,000.00.

149.    The sale of the Blackrock Shares to Irish Agricultural was a transfer of property of the Debtor's estate.

150.    The sale of the Blackrock Shares occurred after the Petition Date.

151.    The sale of the Blackrock Shares to Irish Agricultural was not authorized by any provision of the Bankruptcy Code.

152.    The sale of the Blackrock Shares to Irish Agricultural was not authorized by this Court.

153.    Based upon the foregoing, the Debtor is entitled to an order and judgment against the Receiver and Irish Agricultural pursuant to 11 U.S.C. § 549 avoiding any transfer of the Blackrock Shares to Irish Agricultural that occurred after the Petition Date.

154.    Pursuant to section 550(a) of the Bankruptcy Code, the Debtor "may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from –":

> (1)    the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)    any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

155.    Irish Agricultural was the initial transferee of the Blackrock Shares or the immediate or mediate transferee of such initial transferee or person for whose benefit the transfer was made under its sale contract with the Receiver and/or RSM Ireland.

156.    Based upon the foregoing, the Debtor is entitled to an order and judgment against Irish Agricultural to recover the Blackrock Shares or the value of the Blackrock Shares, plus (i) pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and; (ii) the attorneys' fees and costs of this action.

WHEREFORE,    Joseph    C.    Sheehan,    Plaintiff    and    Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Irish Agricultural: (i) avoiding the transfer of the Blackrock Shares to Irish Agricultural; (ii) directing Irish Agricultural to return the Blackrock Shares or entering a judgment for the value of the Blackrock Shares; (iii) assessing pre-and post-judgment interest from the date of the transfer at the maximum legal rate and to the fullest extent allowed under applicable law, together with the costs and expenses of this action, including, without limitation, attorneys' fees; and (iv) granting such other and further relief as this Court deems appropriate under the circumstances.

### COUNT 6 – AVOIDANCE AND RECOVERY OF UNAUTHORIZED POST-PETITION TRANSFER
*11 U.S.C. §§ 549 and 550*
**(Against Breccia)**

157.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this Complaint as this paragraph 157 of this Count 6.

158.    Section 549(a) of the Bankruptcy Code provides that the Debtor "may avoid a transfer of property of the estate … that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(2)(B).

159.    Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

160.    Property of the estate includes, with limited exceptions, all property of the debtor, "wherever located and by whomever held". 11 U.S.C. § 541(a).

161.    The Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541.

162.    After the Petition Date, the Receiver sold the Blackrock Shares to Irish Agricultural for the sale price of approximately €20,300,000.00.

163.    The proceeds of the sale of the Blackrock Shares are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a).

164.    Following the sale of the Blackrock Shares, on information and belief, the Receiver transferred the proceeds of the sale to Breccia (the "Receiver/Breccia Transfer").

165.    The Receiver/Breccia Transfer occurred after the Petition Date.

166.    The sale of the Blackrock Shares to Irish Agricultural was not authorized by any provision of the Bankruptcy Code or by this Court.

167.    The Receiver/Breccia Transfer was not authorized by this Court.

168.    The Debtor is entitled to an order and judgment against the Receiver and Breccia pursuant to 11 U.S.C. § 549 avoiding the Receiver/Breccia Transfer.

169.    Pursuant to section 550(a) of the Bankruptcy Code, the Debtor "may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from –":

> (1)    the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2)     any immediate or mediate transferee of such initial
transferee.

11 U.S.C. § 550(a).

170.    Breccia was the initial transferee of the Receiver/Breccia Transfer or the immediate

or mediate transferee of such initial transferee or person for whose benefit the Receiver/Breccia

Transfer was made.

171.    Based upon the foregoing, the Debtor is entitled to an order and judgment against

Breccia to recover the proceeds of the sale of the Blackrock Shares from Breccia or for a judgment

for the value thereof, plus (i) pre- and post-judgment interest thereon from the date of demand to

the date of payment or other satisfaction of such order and judgment and; (ii) the attorneys' fees

and costs of this action.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession

respectfully requests the entry of judgment in favor of the Debtor and against Breccia: (i) avoiding

the Receiver/Breccia Transfer; (ii) directing Breccia to return the Receiver/Breccia Transfer or

entering a judgment for the value thereof; (iii) assessing pre-and post-judgment interest from the

date of the Receiver/Breccia Transfer at the maximum legal rate and to the fullest extent allowed

under applicable law, together with the costs and expenses of this action, including, without

limitation, attorneys' fees; and (iv) granting such other and further relief as this Court deems

appropriate under the circumstances.

### COUNT 7 – AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER
*11 U.S.C. § 548 and 550*
**(Against Irish Agricultural, pled in the alternative to Counts 3 and 5)**

172.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 73 of this

Complaint as this paragraph 172 of this Count 7.

173.   To the extent that the sale of the Blackrock Shares occurred prior to the Petition Date, the provisions of 11 U.S.C. § 549 are inapplicable.

174.   Section 548(a)(1)(B) of the Bankruptcy Code provides, in relevant part, that the Debtor may avoid "any transfer … of an interest of the debtor in property … if the debtor voluntarily or involuntarily –"

> (i)   received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)
>
>> (I)   was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>>
>> (II)   was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>>
>> (III)   intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>>
>> (IV)   made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

175.   The Debtor was insolvent on the date that the Blackrock Shares were sold to Irish Agricultural.

176.   The Debtor received less than reasonably equivalent value in exchange for the sale of the Blackrock Shares to Irish Agricultural.

177.    At the time of the sale of the Blackrock Shares to Irish Agricultural, the Debtor was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the debtor was unreasonably small capital.

178.    At the time of the sale of the Blackrock Shares to Irish Agricultural for the approximate sale price of €20,300,000, there was a competing bidder for the purchase of the Blackrock Shares in an amount of not less than €40,000,000.

179.    The Debtor has not received any payment from the Receiver on account of his equity interest in the Blackrock Shares.

180.    If the Receiver had sold the Blackrock Shares for an amount of not less than €40,000,000, the Debtor would have realized an equity payout for his interest in the Blackrock Shares in an amount sufficient to pay a significant dividend to his general unsecured creditors.

181.    The sale of the Blackrock Shares by the Receiver to Irish Agricultural is voidable as a fraudulent transfer, as Irish Agricultural is an immediate and/or mediate transferee, taking with knowledge of the voidability of the transfer.

182.    The Debtor is entitled to avoid the sale of the Blackrock Shares by the Receiver to Irish Agricultural pursuant to 11 U.S.C. § 548(a)(1)(B) and to recover the transfer pursuant to 11 U.S.C. § 550.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Irish Agricultural: (i) avoiding the transfer of the Blackrock Shares to Irish Agricultural; (ii) directing Irish Agricultural to return the Blackrock Shares or entering judgment for the value thereof to the Debtor; (iii) assessing pre-and post-judgment interest from the date of the transfer at the maximum legal rate and to the fullest extent allowed under applicable law, together with the costs and

expenses of this action, including, without limitation, attorneys' fees; and (iv) granting such other

and further relief as this Court deems appropriate under the circumstances.

## COUNT 8 – ENFORCEMENT OF THE AUTOMATIC STAY
### *11 U.S.C. § 362*
### (Against Murran, RSM Ireland, Breccia and Irish Agricultural)

183.   The Debtor hereby re-alleges and incorporates paragraphs 1 through 182 of this

Complaint as this paragraph 183 of this Count 8.

184.   The commencement of the Bankruptcy Case "operates as a stay, applicable to all

entities" of the following acts:

> (1)   the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2)   the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3)   any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4)   any act to create, perfect, or enforce any lien against property of the estate;

> (5)   any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

> (6)   any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

> (7)   the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8)    the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a).

185.    The automatic stay of 11 U.S.C. § 362(a) applies worldwide, whether or not it is consistent with the domestic law of a foreign country.

*The Receiver Post-Petition Acts*

186.    Since the Petition Date, the Receiver has engaged in conduct with respect to the Debtor and property of the Debtor's bankruptcy estate including, but not limited to:

a)    failing and refusing to cede control over the Blackrock Shares to the Debtor;

b)    refusing to turn over the Blackrock Shares to the Debtor;

c)    refusing to file an accounting of the Blackrock Shares or the proceeds thereof;

d)    selling the Blackrock Shares to Irish Agricultural after the Petition Date;

e)    selling the Blackrock Shares to Irish Agricultural for an amount substantially less than the actual value of the Blackrock Shares;

f)    contacting the Debtor directly after the Petition Date to advise of the sale of the Blackrock Shares to Irish Agricultural and to demand additional information of the Debtor relating to the Blackrock Shares in order "to progress matters in the [Blackrock] Receivership";

g)    accepting an appointment to serve as receiver of the Ballyheigue Property;

h)    forcing entry to the Ballyheigue Property without the Debtor's consent;

i)    changing the locks to the residence at the Ballyheigue Proeprty;

j)    failing and refusing to cede control over the Ballyheigue Property to the Debtor;

k)    refusing to turn over the Ballyheigue Property to the Debtor;

33

l) refusing to file an accounting of the Ballyheigue Property or the proceeds thereof; and

m) directly contacting the Debtor to advise of the Ballyheigue Receivership and demand additional information and documents so that the Receiver could move forward with the Ballyheigue Receivership.

(the acts set forth in the foregoing bullets (a) through (m) are hereinafter referred to as the "Receiver Post-Petition Acts").

187.    The Receiver Post-Petition Acts constitute the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the Petition Date, or to recover a claim against the debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(1).

188.    The Receiver Post-Petition Acts were acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

189.    The Receiver Post-Petition Acts were acts to create, perfect, or enforce a lien against property of the estate in violation of 11 U.S.C. § 362(a)(4).

190.    The Receiver Post-Petition Acts were acts to create, perfect, or enforce against property of the Debtor a lien to the extent that such lien secures a claim that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(5).

191.    The Receiver Post-Petition Acts were acts to collect, assess, or recover a claim against the Debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(6).

192.    Each of the Receiver Post-Petition Acts was done by the Receiver with actual knowledge of the filing of the Bankruptcy Case and the imposition of the automatic stay.

*The Breccia Post-Petition Acts*

193.    Since the Petition Date, Breccia has engaged in conduct with respect to the Debtor and property of the Debtor's bankruptcy estate including, but not limited to:

  a)    Allowing the Blackrock Receivership to continue;

  b)    Allowing the sale of the Blackrock Shares to proceed on Breccia's behalf;

  c)    Accepting payment from the Receiver of proceeds of the sale of the Blackrock Shares; and

  d)    Allowing the Ballyheigue Receivership to proceed on Breccia's behalf.

(the acts set forth in the foregoing bullets (a) through (d) are hereinafter referred to as the "Breccia Post-Petition Acts").

194.    The Breccia Post-Petition Acts constitute the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the Petition Date, or to recover a claim against the debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(1).

195.    The Breccia Post-Petition Acts were acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

196.    The Breccia Post-Petition Acts were acts to create, perfect, or enforce a lien against property of the estate in violation of 11 U.S.C. § 362(a)(4).

197.    The Breccia Post-Petition Acts were acts to create, perfect, or enforce against property of the Debtor a lien to the extent that such lien secures a claim that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(5).

198.    The Breccia Post-Petition Acts were acts to collect, assess, or recover a claim against the Debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(6).

199.    Breccia's acceptance of the proceeds of the sale of the Blackrock Shares from the Receiver was the setoff of a debt owing to the Debtor that arose before Petition Date against a claim against the Debtor in violation of 11 U.S.C. § 362(a)(7).

200.    The Breccia Post-Petition Acts were done by Breccia with actual knowledge of the filing of the Bankruptcy Case and the imposition of the automatic stay.

*The Irish Agricultural Post-Petition Acts*

201.    Since the Petition Date, Irish Agricultural has engaged in conduct with respect to the Debtor and property of the Debtor's bankruptcy estate including, but not limited to:

a)    Purchasing the Blackrock Shares from the Receiver;

b)    Failing and refusing to turn over the Blackrock Shares to the Debtor.

(the acts set forth in the foregoing bullets (a) through (b) are hereinafter referred to as the "Irish Agricultural Post-Petition Acts").

202.    The Irish Agricultural Post-Petition Acts constitute the commencement or continuation of a judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the Petition Date, or to recover a claim against the debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(1).

203.    The Irish Agricultural Post-Petition Acts were acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3).

204.    The Irish Agricultural Post-Petition Acts were acts to create, perfect, or enforce a lien against property of the estate in violation of 11 U.S.C. § 362(a)(4).

205.    The Irish Agricultural Post-Petition Acts were acts to create, perfect, or enforce against property of the Debtor a lien to the extent that such lien secures a claim that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(5).

206.    The Irish Agricultural Post-Petition Acts were acts to collect, assess, or recover a claim against the Debtor that arose before the Petition Date in violation of 11 U.S.C. § 362(a)(6).

207.    The Irish Agricultural Post-Petition Acts were done by Irish Agricultural with actual knowledge of the filing of the Bankruptcy Case and the imposition of the automatic stay.

*Relief for Willful Violations of the Automatic Stay*

208.    Pursuant to 11 U.S.C. § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

209.    The Debtor has suffered actual damages resulting from the Receiver Post-Petition Acts, the Breccia Post-Petition Acts and the Irish Agricultural Post-Petition Acts, including, but not limited to: (i) being deprived of the value and use of the Blackrock Shares to facilitate his efforts to reorganize and pay his creditors; and (ii) being deprived of the value and use of the Ballyheigue Property to facilitate his efforts to reorganize and pay his creditors.

210.    The Debtor has suffered additional actual damages by being forced to commence litigation with the Murran, RSM Ireland, Breccia and Irish Agricultural to enforce the provisions of section 362 of the Bankruptcy Code

211.    The Receiver Post-Petition Acts are particularly egregious and demonstrate reckless and callous disregard for the Bankruptcy Code, the rights of the Debtor and the authority of this Court, justifying the issuance of punitive damages to punish the Receiver's willful

violations of the automatic stay, vindicate the authority of this Court and the Bankruptcy Code and deter future egregious conduct.

212.    The Breccia Post-Petition Acts are particularly egregious and demonstrate reckless and callous disregard for the Bankruptcy Code, the rights of the Debtor and the authority of this Court, justifying the issuance of punitive damages to punish the Receiver's willful violations of the automatic stay, vindicate the authority of the Court and the Bankruptcy Code and deter future egregious conduct.

213.    The Irish Agricultural Post-Petition Acts are particularly egregious and demonstrate the reckless and callous disregard for the Bankruptcy Code, the rights of the Debtor and the authority of this Court, justifying the issuance of punitive damages to punish the Receiver's willful violations of the automatic stay, vindicate the authority of the Court and the Bankruptcy Code and deter future egregious conduct.

214.    The Receiver Post-Petition Acts, the Breccia Post-Petition Acts, and the Irish Agricultural Post-Petition Acts were undertaken collectively in an effort to pillage the Debtor's assets outside of the supervision of the Bankruptcy Court, contrary to the Bankruptcy Code, including, but not limited to: (i) the Receiver's, Breccia's and Irish Agricultural' s completion of an insider sale of the Blackrock Shares at a substantial discount – of at least €19,000,000.00 – for the eventual purchaser; and (ii) the Receiver's and Breccia's commencement of the Ballyheigue Receivership despite having received several notices and warnings from the Debtor regarding the commencement of the Bankruptcy Case and the resulting imposition of the automatic stay.

215.    The Debtor has notified the Receiver, Breccia and Irish Agricultural on numerous occasions of the filing of the Debtor's Bankruptcy Case, the creation of the Debtor's bankruptcy estate and the imposition of the automatic stay.

216.     Despite being on actual notice of the Bankruptcy Case, the creation of the Debtor's bankruptcy estate and the imposition of the automatic stay, the Receiver, Breccia and Irish Agricultural have engaged in conduct in violation of the automatic stay including, but not limited to, the Receiver Post-Petition Acts, the Breccia Post-Petition Acts and the Irish Agricultural Post-Petition Acts.

217.     The Receiver has advised the Debtor that, with respect to the Blackrock Receivership and the Ballyheigue Receivership, the Receiver has no intention of complying with the provisions of section 362 of the Bankruptcy Code.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Murran, RSM Ireland, Breccia and Irish Agricultural: (i) awarding the Debtor actual damages pursuant to 11 U.S.C. § 362(k)(1) in an amount to be proven at trial, but not less than the value of the Blackrock Shares, plus the value of the Ballyheigue Property, plus the attorneys' fees and costs incurred by the Debtor in enforcing the automatic stay; (ii) awarding the Debtor punitive damages pursuant to 11 U.S.C. § 362(k)(1) in an amount to be proven at trial; and (iii) granting such other and further relief as this Court deems appropriate under the circumstances.

### COUNT 9 – DECLARATORY JUDGMENT AND RELATED RELIEF
*11 U.S.C. §§ 362 & 105(a)*
**(Against Murran, RSM Ireland, Breccia and Irish Agricultural)**

218.     The Debtor hereby re-alleges and incorporates paragraphs 1 through 217 of this Complaint as this paragraph 218 of this Count 9.

219.     Pursuant to section 105(a) of the Bankruptcy Code, this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

220.    The Receiver Post-Petition Acts are violations of the automatic stay set forth in 11 U.S.C. § 362(a).

221.    The Breccia Post-Petition Acts are violations of the automatic stay set forth in 11 U.S.C. § 362(a).

222.    The Irish Agricultural Post-Petition Acts are violations of the automatic stay set forth in 11 U.S.C. § 362(a).

223.    Actions taken in violation of the automatic stay are void *ab initio*.

224.    The Receiver Post-Petition Acts are void *ab initio*.

225.    The Breccia Post-Petition Acts are void *ab initio*.

226.    The Irish Agricultural Post-Petition Acts are void *ab initio*.

227.    The Debtor is likely to succeed on the merits of his claims alleged herein against the Receiver, Breccia and Irish Agricultural.

228.    The Debtor will have no adequate remedy at law if the Blackrock Shares and the Ballyheigue Property are not returned to his estate.

229.    The Debtor will suffer irreparable harm is the Blackrock Shares and the Ballyheigue Property are not returned to his estate.

230.    Any harm to the Receiver, Breccia and/or Irish Agricultural resulting from the entry of injunctive relief is minimal compared to the harm to the Debtor and his estate if injunctive relief does not issue.

231.    In order to carry out the provisions of section 362 of the Bankruptcy Code, the Debtor requires the entry of an Order: (i) declaring that the Receiver Post-Petition Acts, the Breccia Post-Petition Acts, the Irish Agricultural Post-Petition Acts and any other acts in furtherance of the Blackrock Receivership and/or the Ballyheigue are void *ab initio*; (ii) requiring immediate

turnover of the Blackrock Shares to the Debtor; and (iii) requiring the immediate turnover of the Ballyheigue Property to the Debtor.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Murran, RSM Ireland, Breccia and Irish Agricultural: (i) declaring that the Receiver Post-Petition Acts violated section 362(a) of the Bankruptcy Code; (ii) declaring that the Breccia Post-Petition Acts violated section 362(a) of the Bankruptcy Code; (iii) declaring that the Irish Agricultural Acts violated section 362(a) of the Bankruptcy Code; (iv) declaring that the Receiver Post-Petition Acts, the Breccia Post-Petition, the Irish Agricultural Post-Petition Acts and any other acts in furtherance of the Blackrock Receivership and/or the Ballyheigue Receivership are void *ab initio*; (v) requiring immediate turnover of the Blackrock Shares to the Debtor; (iii) requiring the immediate turnover of the Ballyheigue Property to the Debtor and (vi) granting such other and further relief as this Court deems appropriate under the circumstances.

## COUNT 10 – DISALLOWANCE OF CLAIMS
*11 U.S.C. § 502(d) & (j)*
**(Against Murran and RSM Ireland)**

232.    The Debtor hereby re-alleges and incorporates paragraphs 1 through 231 of this Complaint as this paragraph 232 of this Count 10.

233.    Murran and RSM Ireland are the transferees of the Ballyheigue Property.

234.    The transfer of the Ballyheigue Property to the Receiver is avoidable under section 549 of the Bankruptcy Code.

235.    The Ballyheigue Property is recoverable under section 550 of the Bankruptcy Code.

236.    The Receiver has not returned the Ballyheigue Property or the value of the Ballyheigue Property, for which the Receiver is liable under section 550 of the Bankruptcy Code.

237.     Pursuant to 11 U.S.C. § 502(d), any and all claims of the Receiver and/or its assignee against the Debtor's estate shall be disallowed until such time as the Receiver pays the Debtor an amount equal to the aggregate amount of the Ballyheigue Property, plus interest thereon and costs.

238.     Pursuant to 11 U.S.C. § 502(j), any and all claim of the Receiver and/or its assignee against the Debtor's estate previously allowed shall be reconsidered and disallowed until such time as the Receiver pays to the Debtor an amount equal to the Ballyheigue Property.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Murran and RSM Ireland: (i) disallowing any and all claims held or filed by Murran and/or RSM Ireland against the Debtor until Murran and/or RSM Ireland returns the Ballyheigue Property or the value of the Ballyheigue Property to the Debtor pursuant to 11 U.S.C. §§ 502(d) and (j); and (ii) granting such other and further relief as this Court deems appropriate under the circumstances.

## COUNT 11 – DISALLOWANCE OF CLAIMS
*11 U.S.C. § 502(d) & (j)*
**(Against Breccia)**

239.     The Debtor hereby re-alleges and incorporates paragraphs 1 through 238 of this Complaint as this paragraph 239 of this Count 11.

240.     Breccia is the transferee of the proceeds of the sale of the Blackrock Shares.

241.     The transfer of the proceeds of the Blackrock Shares to the Breccia is avoidable under section 549 of the Bankruptcy Code.

242.     The proceeds of the Blackrock Shares are recoverable under section 550 of the Bankruptcy Code.

243.   Breccia has not returned the proceeds of the Blackrock Shares or the value thereof, for which Breccia is liable under section 550 of the Bankruptcy Code.

244.   Pursuant to 11 U.S.C. § 502(d), any and all claims of Breccia and/or its assignee against the Debtor's estate shall be disallowed until such time as Breccia pays the Debtor an amount equal to the aggregate amount of the proceeds of the Blackrock Shares received by Breccia, plus interest thereon and costs.

245.   Pursuant to 11 U.S.C. § 502(j), any and all claim of Breccia and/or its assignee against the Debtor's estate previously allowed shall be reconsidered and disallowed until such time as Breccia pays to the Debtor an amount equal to the proceeds of the Blackrock Shares received by Breccia.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Breccia: (i) disallowing any and all claims held or filed by Breccia against the Debtor until Breccia returns the proceeds of the Blackrock Shares received by Breccia or the value thereof to the Debtor pursuant to 11 U.S.C. §§ 502(d) and (j); and (ii) granting such other and further relief as this Court deems appropriate under the circumstances.

**COUNT 12 – DISALLOWANCE OF CLAIMS**
*11 U.S.C. § 502(d) & (j)*
**(Against Irish Agricultural)**

246.   The Debtor hereby re-alleges and incorporates paragraphs 1 through 245 of this Complaint as this paragraph 246 of this Count 12.

247.   Irish Agricultural is the transferee of the proceeds of the sale of the Blackrock Shares.

248.    The transfer of the Blackrock Shares to the Irish Agricultural is avoidable under section 549 of the Bankruptcy Code.

249.    The Blackrock Shares are recoverable under section 550 of the Bankruptcy Code.

250.    Irish Agricultural has not returned the Blackrock Shares or the value thereof, for which Irish Agricultural is liable under section 550 of the Bankruptcy Code.

251.    Pursuant to 11 U.S.C. § 502(d), any and all claims of Irish Agricultural and/or its assignee against the Debtor's estate shall be disallowed until such time as Irish Agricultural turns over the Blackrock Shares or pays the Debtor an amount equal to the value the Blackrock Shares, plus interest thereon and costs.

252.    Pursuant to 11 U.S.C. § 502(j), any and all claims of Irish Agricultural and/or its assignee against the Debtor's estate previously allowed shall be reconsidered and disallowed until such time as Irish Agricultural turns over the Blackrock Shares or pays the Debtor an amount equal to the value the Blackrock Shares, plus interest thereon and costs.

WHEREFORE, Joseph C. Sheehan, Plaintiff and Debtor/Debtor-in-Possession respectfully requests the entry of judgment in favor of the Debtor and against Irish Agricultural: (i) disallowing any and all claims held or filed by Irish Agricultural against the Debtor until Irish Agricultural returns the Blackrock Shares or the value thereof to the Debtor pursuant to 11 U.S.C. §§ 502(d) and (j); and (ii) granting such other and further relief as this Court deems appropriate under the circumstances.

Respectfully submitted:

JOSEPH C. SHEEHAN, *Debtor/Debtor-in-Possession,*

By:/s/ David K. Welch_____
              One of his attorneys

44

**DEBTOR'S COUNSEL**:
David K. Welch, Esq. (Atty. No. 06183621)
Brian P. Welch (Atty. No. 6307292)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Ave., Suite 2100
Chicago, IL 60611
TEL: (312) 840-7000  FAX: (312) 840-7900