# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re:  JOSEPH C. SHEEHAN, | ) | Chapter 11 |
| | ) | Case No. 20-07130 |
| Debtor. | ) | Hon. Jacqueline P. Cox |

## NOTICE OF MOTION

TO:   See attached Service List.

PLEASE TAKE NOTICE that on <u>August 1, 2023</u>, at <u>1:00 P.M.</u>, I will appear before the Honorable Jacqueline P. Cox, or any judge sitting in that judge's place, **either** in Courtroom 680 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 **or** electronically as described below, and present the motion of <u>Blackrock Medical Partners Limited</u> for <u>Order Dismissing the Debtor's Bankruptcy Case, or, Alternatively, Granting Relief from Automatic Stay</u>, a copy of which is attached.

**All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government (audio only).**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode**. The meeting ID for this hearing is <u>161 273 2896</u>, and the passcode is <u>778135</u>. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

By:  */s/ Melinda L. Mannlein*
*Attorney for Movant Myles Kirby, Liquidator, o/b/o Blackrock Medical Partners Limited*
Melinda L. Mannlein – ARDC No. 6288382
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614
Phone: 309-688-9400
Email: mmannlein@hrbklaw.com

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re:   JOSEPH C. SHEEHAN, | ) | Chapter 11 |
| | ) | Case No. 20-07130 |
| Debtor. | ) | Hon. Jacqueline P. Cox |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 18, 2023, she caused a copy of the foregoing **NOTICE OF MOTION** and attached **MOTION OF BLACKROCK MEDICAL PARTNERS LIMITED FOR ORDER DISMISSING THE DEBTOR'S BANKRUPTCY CASE OR, ALTERNATIVELY, GRANTING RELIEF FROM AUTOMATIC STAY** to be served on all the parties listed on the attached **Service List**, in the manner provided therein.

                                                                            /s/ Melinda L. Mannlein
                                                                           Melinda L. Mannlein

Melinda L. Mannlein – ARDC No. 6288382
*Attorney for Movant Myles Kirby o/b/o Blackrock Medical Partners Limited*
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614
Phone: 309-688-9400
Email: mmannlein@hrbklaw.com
        aswearingen@hrbklaw.com

## SERVICE LIST

**Via the Court's Electronic Filing System (ECF):**

Patrick S Layng
Office of the U.S. Trustee, Region 11
219 S Dearborn Street, Room 873
Chicago, IL 60604

Brian P Welch
David K Welch
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash, 21st Floor
Chicago, IL 60611

William J. Factor
The Law Offices of William J. Factor, Ltd.
105 W. Madison St., Suite 1500
Chicago, IL 60602

Burke Warren & Mackay
225 W Washington St 24th Fl
Chicago, IL 60601

Shannon L. Gonyou
Stephen C. Hackney
Alexander D McCammon
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60645

Jason J. Ben
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

Wesley T Kozeny
Bonial & Associates, P.C.
12400 Olive Blvd, Suite 555
St. Louis, MO 63141

Jennifer Madden
Skadden, Arps, Slate, Meagher and Flom L
525 University Avenue
Palo Alto, CA 94301

**Via U.S. Mail, postage prepaid:**

Joseph C. Sheehan
28W531 Roosevelt Road
Winfield, IL 60190

Alanis Capital Ltd.
61 Fitzwilliam Square N
Dublin 2 Ireland
D02V099

Arthur Cox
Ten Earlsfort Terrace
Dublin 2, Ireland D02 T_380

Bank of America
PO Box 851001
Dallas, TX 75285-1001

Bank of America
PO Box 982234
El Paso, TX 79998-2234

Bank of America, N.A.
PO Box 982284
El Paso, TX 79998-2284

Behan & Associates
Blanchardstown Corporate Park
Dublin 15, Ireland
Dl5 FW77 DX 207

Blackrock Hospital Ltd.
Rock Road
Blackrock, Dublin, Ireland

Breccia UC
1 Setanta
Dublin, D02 V968, Ireland

Damien Murran, RSM Ireland Business
Trinity House, Charleston Road
Ranelagh Dublin 6
D06C8X4 Ireland

Deloitte Ireland LLP
c/o Brian Fennelly
Deloitte House, Earlsfort Terrace
Dublin 2, Ireland D02 AY28

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Discover Bank
Discover Products Inc
PO Box 3025
New Albany, OH 43054-3025

Fifth Third Bank
PO Box 740778
Cincinnati, OH 45274-0778

Internal Revenue Service
Mail Stop 5014CHI
230 South Dearborn Street
Room 2600
Chicago, IL 60604

Internal Revenue Service
310 Lowell St.
Andover, MA 01810-4544

LK Shields Solicitors
39-40 Upper Mount Street
Dublin 2, Ireland

Michael Desmond, Trustee
c/o William J. Factor, FactorLaw
105 W. Madison Street, Suite 1500
Chicago, IL 60602

Michael K. Desmond, Ch. 7 Trustee
Figliulo & Silverman PC
10 S. LaSalle St., Suite 3600
Chicago, IL 60603

O'Neill & Company
240 Central Park South
New York, NY 10019

Oaktree Capital Management, LP
333 South Grand Ave., 28th FL
Los Angeles, CA 90071

Shannon O'Connor
6 Hatch Street Lower
Dublin 2, Ireland

Gavin Simons, Amos Solicitors
Warrington House, Mount Street Crescent
Dublin 2, Ireland

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 20-07130 |
| JOSEPH C. SHEEHAN, | ) | Hon. Jacqueline P. Cox |
| | ) | Chapter 11 |
| Debtor. | ) | |

### MOTION OF BLACKROCK MEDICAL PARTNERS LIMITED FOR ORDER DISMISSING THE DEBTOR'S BANKRUPTCY CASE OR, ALTERNATIVELY, GRANTING RELIEF FROM AUTOMATIC STAY

Party in interest MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland (the "**Movant**"), by and through his attorneys, Melinda L. Mannlein and Hasselberg, Rock, Bell & Kuppler, LLP, respectfully moves this Court (the "**Motion**"), for entry of an order (i) dismissing the above-captioned bankruptcy case filed by JOSEPH C. SHEEHAN (the "**Debtor**") pursuant to 11 U.S.C. § 1112(b), or, in the alternative, (ii) modifying the automatic stay pursuant to 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001 to allow Movant to prosecute an action against Debtor brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), 18 U.S.C.A. § 1961, et seq., as Case No. 2023 CV 936 in the U.S. District Court for the Northern District of Illinois (the "**RICO Case**"). In support of this Motion, Movant states as follows:

### INTRODUCTION

1. Debtor has unabashedly admitted that he filed this bankruptcy case to gain control of the sale of shares in an Irish company. In other words, it was never an effort at an orderly restructuring but strictly a tactical move – one that has now failed at all levels and, by Debtor's own admission, means he cannot reorganize. Notably, this is not Debtor's first failed attempt to use U.S. bankruptcy proceeding to interfere with Irish litigation.

2.  Moreover, Debtor filed this bankruptcy case knowing that the Irish High Court was specifically inquiring into the whereabout of funds he removed from Movant's bank account in early 2020, as its then-director, but he did not disclose Movant as a creditor, notice it of this cause, or schedule any liability to Movant. Investigation into Debtor's removal of Movant's funds ultimately resulted in the filing of the RICO Case against Debtor and nine others on February 15, 2023. Notice of the RICO Case was promptly delivered to Debtor, but – in a calculated move to use the automatic stay to avoid service in the RICO Case – Debtor did not notify Movant of this bankruptcy case until May 18, 2023, the day after Movant obtained an order to serve Debtor using alternative methods. To date, Debtor has not disclosed Movant as a creditor in this bankruptcy, scheduled any liability to Movant, or served Movant with his First Amended Plan of Reorganization, showing ongoing bad faith and an ostensible failure to follow court orders.

3.  For these reasons, as set forth in more detail below, Movant requests that Debtor's Chapter 11 bankruptcy case be dismissed for cause under 11 U.S.C. § 1112(b), or, in the alternative, that the Court grant Movant relief from the automatic stay to pursue its RICO Case against Debtor, including immediate service of process, at least to a determination of liability therein.

**JURISDICTION**

4.  This Court has jurisdiction over this matter pursuant to [28 U.S.C. 157(a)](28 U.S.C. 157(a)) and [1334](1334). The Motion is a "core proceeding" within the meaning of [28 U.S.C. 157(b)(2)](28 U.S.C. 157(b)(2)).

**FACTUAL AND PROCEDURAL BACKROUND**

5.  Movant BLACKROCK MEDICAL PARTNERS LIMITED is a company organized and registered in the Republic of Ireland that is currently subject to compulsory liquidation by the High Court of Ireland in High Court Record 2021 No. 15 COS. On or about

March 1, 2021, MYLES KIRBY of Kirby Healy Chartered Accountants (the "**Liquidator**") was appointed liquidator of Movant. A copy of the order appointing the Liquidator is attached hereto as **Exhibit 1**. Pursuant to Section 627, Table 1(a) of the Irish Companies Act 2014, the Liquidator has the power to bring any action or other legal proceeding in the name and on behalf of Movant.

6. Movant is a party in interest to this bankruptcy because, as detailed below, it is a creditor as defined in 11 U.S.C. 101(10) and its interest is being adversely affected by the pendency of this bankruptcy proceeding. *See In re Int'l Oriental Rug Ctr., Inc.*, 165 B.R. 436, 440 (Bankr. N.D.Ill. 1994) & 11 U.S.C. 1109(b).

### Debtor's Bankruptcy-Related Proceedings

7. On or about November 9, 2018, Debtor directed the filing of two bankruptcy proceedings in this court: one for Movant and one for BMP Galway LLC, which were both companies under his control at that time. *See In re BMP Galway LLC*, Case No. 18-31568 (Bankr. N.D.Ill.), Docs. 1, 8 & 9; *In re Blackrock Medical Partners Limited*, Case No. 18-31569 (Bankr. N.D.Ill.), Docs. 1, 8 & 9.

8. On or about January 23, 2019, both bankruptcy cases were dismissed as bad faith filings after a consolidated hearing. *Id*., Docs. 12 & 29.[1]

9. On or about March 12, 2020, Debtor filed his personal Chapter 11 bankruptcy petition in this cause. Doc. 1.

10. On or about March 23, 2020, Debtor filed his first Motion for Extension of Time

---

[1] During the hearing on the consolidated motions to dismiss the 2018 bankruptcy cases, Judge Bauer stated,

> "Truly the debtor filed this case – that's your company - solely to get the automatic stay and maybe in part try to control somewhat what's going on in Ireland. Although I'm not sure he really would. When I review all of the factors and I reviewed this and frankly given what you have said here today is sort of confirming my basic understanding of what's going on. I do not - I do believe this is a bad faith filing. I do not believe this is an appropriate Chapter 11 case. I am going to dismiss it. I think that concludes the matter."

Doc. 37, Exh. B.

to File Schedules and Statement of Financial Affairs with this Court, therein stating that "*the Debtor commenced this Chapter 11 case so that the Debtor could market the Blackrock Shares for sale under the supervision of this Court* with the expectation that the Blackrock Shares will generate a substantial dividend in excess of secured claims which will generate a recovery for all of the Debtor's creditors." Doc. 11, para. 14 (emphasis added).

11. On or about April 13, 2020, Debtor filed his Adversary Complaint against Breccia Unlimited Company ("**Breccia**") and several other Irish parties to affect his stated purpose of the bankruptcy case – to control the sale of the Blackrock Shares. Doc. 20. Debtor alleged that an Irish Receiver possessed the Blackrock Shares and Ballyheigue Property, both of which he claimed to be part of the bankruptcy estate. *Id*., paras. 83, 85, 87, 89. "[I]mmediately upon the filing of the Bankruptcy Case", Debtor notified the Receiver of the automatic stay, *Id*., para. 42, showing his instantaneous tactical use of the bankruptcy case to interfere with Irish proceedings. Debtor then claimed that the Receiver violated the automatic stay by proceeding with already-instituted foreclosure proceedings in Ireland. *Id*., Ct. 8; *see also Sheehan v. Murran (In re Sheehan)*, Case No. 21-2946 (7th Cir.), Doc. 44, pp. 2-5.

12. On or about April 24, 2020, Debtor filed his summary of assets and liabilities, not scheduling Movant as a creditor or any liability to Movant. Doc. 25. He scheduled a total of $128,977,097.39 in assets. *Id*., p.1. These assets largely consisted of the disputed Ballyheigue Property ($800,000), the disputed Blackrock Shares ($80,000,000), his Adversary Complaint regarding the Ballyheigue Property and Blackrock Shares ($40,000,000), and alleged dividends due on the Blackrock Shares ($8,157,159.50) – or a sum of $128,957,259.50 in assets located or possessed in Ireland. *Id*., pp.3-8. Of the remaining $19,937.80 in scheduled U.S. assets, *Id*., pp.4-5, he claimed an exemption of $11,750. *Id*., pp.10-11. He scheduled a total of $20,487,215.95 in

liabilities, *Id*., p. 1 & Doc. 31, with $8,695,270.50 in unsecured claims. Doc. 31. He finally listed monthly income of $3,563.28 and expenses of $23,878.33, for a monthly deficit of -$20,315.05. *Id*., pp. 21-24.

13. On or about August 25, 2020, this Court dismissed the Adversary Complaint for lack of personal jurisdiction over the Irish defendants named therein. *Sheehan v. Murran (In re Sheehan),* Adversary No. 20-ap-00146 (Bankr. N.D.Ill.), Docs. 29-31.

14. On or about September 4, 2020, Debtor appealed the dismissal of the Adversary Complaint to the District Court. *Sheehan v. Murran (In re Sheehan),* Adversary No. 20-ap-00146 (Bankr. N.D.Ill.), Docs. 33 & 36.

15. On or about September 24, 2021, the District Court affirmed the Bankruptcy Court's dismissal of the Adversary Complaint for lack of personal jurisdiction. *Sheehan v. Murran (In re Sheehan)*, Case No. 20-cv-05283 (N.D.Ill.), Docs. 27 & 28; *Sheehan v. Murran (In re Sheehan)*, Case No. 20-cv-05283 (N.D.Ill.), Docs. 14 & 15.

16. On or about October 22, 2021, Debtor appealed the District Court's ruling to the Seventh Circuit Court of Appeals. *Sheehan v. Murran (In re Sheehan)*, Case No. 20-cv-05283 (N.D.Ill.), Doc. 31; *Sheehan v. Murran (In re Sheehan)*, Case No. 20-cv-05283 (N.D.Ill.), Doc. 17.

17. On or about April 21, 2022, Debtor filed his Chapter 11 Plan of Reorganization, therein admitting that the issues on appeal with the Seventh Circuit "involve the Debtor's entire financial livelihood and ability to reorganize." Doc. 157, p. 3. Debtor's initial plan proposed to repay the fees and expenses of his counsel over a period of time after confirmation of the plan. Doc. 157, pp. 7-8. For creditors, Debtor proposed paying 100% of allowable claims from the proceeds of the Adversary Complaint, if successful; however, if the Adversary Complaint was

unsuccessful, Debtor proposed creditors receive a *pro rata* portion of $10,000 that Debtor would "likely" obtain from family members. *Id*., p. 3, n. 1 & pp. 8-9.

18. On or about September 7, 2022, the Seventh Circuit issued its opinion, affirming the District Court's dismissal of the Adversary Complaint. *Sheehan v. Breccia Unlimited Company (In re Sheehan)*, Case No. 21-2946 (7th Cir.), Doc. 44, a copy of which is attached hereto and incorporated herein as **Exhibit 2** for the court's convenience. The Seventh Circuit noted that "*the court's ability to assert control over any property in Sheehan's estate located in Ireland depends on whether the court has personal jurisdiction over the Irish citizens and entities holding that property*." Exh. 1, p. 10 (emphasis added). The Seventh Circuit then held that the Bankruptcy Court lacked personal jurisdiction over the Irish defendants. *Id*., pp. 9 & 22.

19. On or about January 1, 2023, Debtor filed his First Amended Plan of Reorganization. Doc. 181. Debtor's amended plan removed his counsel's agreement to have its administrative claim be paid over a period of time after confirmation of the plan, *see Id*., p. 8 & Doc. 157, p.8, instead providing that $15,000 in speculative funds from his family members would go towards payment of administrative claims, with $10,000 in hypothetical funds still being split *pro rata* amongst all unsecured creditors. Doc. 181, pp. 3-4, n.1 & pp. 7-9. The amended plan also continued to claim that "[a]s of the filing of this Plan, no decision or ruling has yet been rendered in the 7th Circuit Appeals." Doc. 181, p. 3.

20. On or about April 17, 2023, the Supreme Court denied Debtor's Petition for Writ of Certiorari. *Sheehan v. Breccia Unlimited Company (In re Sheehan)*, Case No. 21-2946 (7th Cir.), Doc. 49.

### Irish Proceedings

21. On or about January 16, 2020, the High Court of Ireland ordered Movant, of which

Debtor was a director at that time, to pay costs to its opposing party in unrelated litigation in Record 2016 No. 7077 P. *See* RICO Case, Doc. 1, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit 3** for the Court's convenience; *see also In re Kirby,* case no. 22-cv-444 (N.D.Ill.), Doc. 1.

22. On or about January 20, 2020, through February 6, 2020, Debtor, acting as a director of Movant, initiated a series of wire transfers whereby approximately €2,542,900.00 (the "**Funds**") were removed from Movant's Irish bank account and redirected to Debtor, his immediate family members, and/or companies controlled thereby. *See* Exh. 3.

23. On or about February 6, 2020, the Irish High Court entered an interim injunction freezing Movant's assets, but it was too late, as Debtor had already depleted Movant's bank account. *See Id*.

24. On or about February 12, 2020, the Irish High Court ordered Debtor to submit an affidavit regarding the assets and liabilities of Movant and the whereabouts of the Funds, among other things, and on February 19, 2020, Debtor filed an affidavit. Copies of the first order and affidavit attached hereto and incorporated herein as **Exhibit 4.**

25. On or about and February 28, 2020, the Irish Court ordered Debtor to submit more detailed information and documentation regarding the Funds, and on March 13, 2020, Debtor filed a second affidavit. Copies of the second order and affidavit are attached hereto and incorporated herein as **Exhibit 5**. In the second affidavit, Debtor admitted to personally initiating transfers from Movant's Irish bank account, as a director, for what he claimed were lawfully due and owing debts; however, he provided no documentation and scant details in support thereof. Exh. 5, paras. 32-38.

26. Starting on or about March 1, 2021, the Liquidator made multiple requests to

Debtor for information and documentation regarding the Funds. Because Debtor would not respond, the Liquidator conducted his own investigation into Movant's affairs and the whereabouts of the Funds. *See In re Kirby*, 22-cv-444 (N.D.Ill.), Doc. 1.

27. On or about February 15, 2023, Movant initiated the RICO Case against Debtor, members of his immediate family, and certain companies controlled thereby. Exh. 3.

28. On or about February 22, 2023, Notice of the RICO Case and a request to waive service of summons was delivered to Debtor's residence by First Class Mail. *See* RICO Case, Docs. 9 & 22-1. Debtor did not return said waiver or notify Movant of this bankruptcy case. *Id.*, Docs. 22-1 & 31.

29. Beginning on or about March 22, 2023, Movant then tried to personally serve Debtor, without success, as he appeared to be evading service. *Id.*, Doc. 22-2.

30. On or about May 17, 2023, Movant obtained an order to pursue alternative methods of service on Debtor. *Id.*, Doc. 23.

31. On or about May 18, 2023, prior to Movant attempting any such alternative methods of service, Debtor's counsel in this case emailed correspondence to Movant's counsel, stating that the RICO action was barred by the automatic stay. A true and correct copy of said correspondence is attached hereto and incorporated herein as **Exhibit 6**; *see also* RICO Case, Doc. 31-1, para. 17.

32. Movant thereafter refrained from serving Debtor in the RICO Case to research Debtor's assertions and subsequently draft this Motion and other simultaneously filed pleadings.[2] *See* RICO Case, Docs. 31 & 31-1.

33. Movant currently has an extension to July 24, 2023, to serve Debtor. *Id.*, Doc. 34.

---

[2] Movant's counsel was also out of the office when Debtor's correspondence arrived due to a family emergency followed by medical leave. *See* RICO case, Doc. 31-1, para. 18.

# ARUGMENT

**I. Debtors' Bad Faith in Filing the Chapter 11 Case, Inability to Reorganize, and Failure to Follow a Court Order Warrant Dismissal for Cause under 11 U.S.C. 1112(b).**

21. Section 1112(b)(1) of the Bankruptcy Code, 11 U.S.C. 1112(b)(1), provides in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

**A. Debtor Filed this Bankruptcy in Bad Faith**

22. Section 1112(b) enumerates sixteen (16) examples of "cause". 11 U.S.C. 1112(b). However, "[a] bankruptcy court has broad discretion under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause," *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994), and may dismiss a case for reasons that are not specifically enumerated in Section 1112(b). *See In re Strug-Division, LLC*, 375 B.R. 445, 448 (Bankr. N.D. Ill. 2007); *In re Original IFPC S'holders, Inc.*, 317 B.R. 738, 749 (Bankr. N.D. Ill. 2004). Because section 1129(a)(3) requires that plans be proposed in "good faith", courts have considered bad faith to be an acceptable basis for dismissal. *In re Jartran, Inc.*, 886 F.2d 859, 867 (7th Cir. 1989); *see also In re N.R. Guaranteed Ret., Inc.*, 112 B.R. 263, 271 (Bankr. N.D. Ill.), *aff'd*, 119 B.R. 149 (N.D. Ill. 1990). In other words, "'good faith' is a threshold prerequisite to securing Chapter 11 relief." *Matter of Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984); *see also In re Local Union 722 Int'l. Bhd. of Teamsters*, 414 B.R. 443, 447 (Bankr. N.D. Ill. 2009), citing *In re Dilling*, 322 B.R. 353, 360 (Bankr.N.D.Ill.2005).

23. As a basic policy, the Bankruptcy Code affords relief only to an "honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998), *quoting Grogan v. Garner*,

498 U.S. 279, 287 (1991). The question of whether a debtor filed a bankruptcy case in good faith is "really whether the debtor has presented a legitimate reorganizational objective within the scope of the Bankruptcy Code or rather has presented 'tactical reasons unrelated to reorganization.'" *In re Liptak*, 304 B.R. 820, 828 (Bankr. N.D. Ill. 2004), *quoting In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). Courts consider the totality of circumstances, examining both objective and subjective standards to ultimately determine "whether, in light of the spirit of the Bankruptcy Code, the filing is fundamentally fair to creditors attempting to exercise their collection rights." *In re Liptak*, 304 B.R. at 828, *citing In re Leavitt,* 209 B.R. 935, 939-41 (9th Cir. BAP 1997), *aff'd* 171 F.3d 1219 (9th Cir.1999); *cf. Matter of Love*, 957 F.2d 1350, 1355, 1357, 1359 (7th Cir.1992) (Chapter 13 dismissal under § 1307(c)).

24.     Courts in this district have enumerated several non-exclusive factors relevant in determining a debtor's good faith, including but not limited to whether: (1) there has been a previous bankruptcy petition by the debtor or a related entity, (2) the pre-petition conduct of the debtor has been improper, (3) the petition effectively allows the debtor to evade court orders, (4) the petition was filed on the eve of foreclosure, (5) the foreclosed property is the sole or major asset of the debtor, (6) the debtor has no ongoing business or employees, (7) there is no possibility of reorganization, (8) the debtor's income is not sufficient to operate, (9) there was no pressure from non-moving creditors, (10) the debtor filed solely to create the automatic stay, (11) the debtor is trying to delay its creditors or reduce their rights, (12) there are allegations of wrongdoing by the debtor, and (13) the debtor filed with a fraudulent or malicious intent or scheme in mind. *See In re Tekena USA*, 419 B.R. 341, 345-46 (Bankr. N.D. Ill. 2009), *In re S. Beach Sec., Inc.,* 341 B.R. 853, 856–57 (Bankr. N.D.Ill. 2006); *In re Original IFPC S'holders, Inc.*, 317 B.R. at 749.

25. Here, there is no question that Debtor filed his bankruptcy case for the explicit tactical purpose of trying to interfere with Irish receivership proceedings regarding the Blackrock Shares and Ballyheigue Property through the pursuit of his Adversary Complaint. *See* Docs. 11, 20, 157, 181. This is an improper purpose and warrants dismissal in and of itself.

26. Moreover, Debtor has a history of involvement in bad faith bankruptcy petitions filed on behalf of his companies. *See In re BMP Galway LLC*, Case No. 18-31568 (Bankr. N.D.Ill.); *In re Blackrock Medical Partners Limited*, Case No. 18-31569 (Bankr. N.D.Ill.). Now, he is pursuing the same strategy with his personal bankruptcy case. Debtor filed this bankruptcy approximately one month after admittedly removing millions of dollars from Movant's bank account, knowing that the Irish court – at a minimum – wanted to know where the money had gone and for what purpose. Exhs. 2-4. After knowing about the RICO Case for months and evading service, he then flagrantly attempted to use the bankruptcy's automatic stay as a last-ditch effort to avoid service. Exh. 5. In doing so, he once again used this bankruptcy case solely for strategic purposes – and against a creditor he had not previously noticed or disclosed in this case. At a minimum, after Debtor received notice of the RICO action on February 22, 2023, there is no reasonable justification for his failure to list Movant as a creditor, schedule the Funds as a liability, or notify Movant of this cause. *See* 11 U.S.C. 1112(b)(2)(B)(i).

27. Avoiding any misleading inference that might be drawn from the terms "good faith" or "bad faith", the inquiry must focus on "whether, in light of the spirit of the Bankruptcy Code, the filing is fundamentally fair to creditors attempting to exercise their collection rights". *In re Liptak*, 304 B.R. at 828. The answer here is an unequivocal "No", and this case should be dismissed under Section 1112(b) of the Bankruptcy Code.

**B. Debtor Cannot Reorganize**

28.     Cause further exists to dismiss the bankruptcy case because Debtor does not have a reasonable likelihood of confirming a plan of reorganization. *In re Original IFPC S'holders*, 317 B.R. at 744 n.5, *citing In re K.C. Marsh Co., Inc.*, 12 B.R. 401 (Bankr. D.Mass. 1981) ("A reorganization plan under chapter 11 must be more than a nebulous speculative venture and must have a realistic chance of success which would lead to rehabilitation, and if outside financing is needed, it must be clearly in sight."). A traditional chapter 11 case does not turn on the anticipated future outcome of litigation. *In re Original IFPC S'holders*, 317 B.R. at 742-43. If a debtor cannot propose a "legally and economically feasible plan of reorganization . . . , then the case was filed only to harass and delay creditors, and therefore was filed in bad faith." *In re Strug-Division*, 375 B.R. at 449; *see also In re Tekena USA*, 419 B.R. at 349-50 ("A Chapter 11 case can be dismissed where the court determines that it is unreasonable to expect that a plan can be confirmed").

29.     Debtor asserted that his ability to reorganize was entirely dependent on the success of his Seventh Circuit appeals. Docs. 157 & 181. He was unsuccessful on said appeals, Exh. 2., and the Supreme Court declined to address the matter. Thus, by Debtor's own admission, he is now unable to reorganize. *Id*.

30.     The Seventh Circuit ruled that the Bankruptcy Court does not have personal jurisdiction over the Irish parties or the Irish property under their control. Exh. 2. Accordingly, said Irish property is not part of the bankruptcy estate, and Debtor has disclosed no cash flow to sustain reorganization. Docs. 25, 31, 157, 181. He has also proposed no actual plan of repayment, only the possibility that he can "likely" obtain money from family members, Docs. 157 & 181, all of which warrant dismissal of this case under Section 1112(b) of the Bankruptcy Code.

### C. Debtor Ostensibly Failed to Comply with an Order of the Court

31. Failure to comply with an order of the court also warrants dismissal for cause. 11 U.S.C. 1112(b)(4). On May 4, 2023, this Court ordered Debtor to mail the Order Setting Continued Hearing on Confirmation of Debtor's First Amended Plan of Reorganization *to all known creditor*s on or before May 15, 2023. Doc. 203, para. C. Though Debtor had not been officially served with process, he had been mailed notice of the RICO Case in February of 2023. RICO Case, Doc. 22-1. Thereafter, he clearly was monitoring the RICO Case, as shown by his counsel's correspondence dated the day after Movant obtained an order granting leave to pursue alternative methods of service on Debtor *and prior to Movant making any such service attempts*. Exh. 5; RICO Case, Docs. 31 & 31-1. Debtor did not feasibly learn of the RICO action between the May 15 deadline in this case and his counsel's May 18 correspondence, meaning that realistically Movant was a known creditor to Debtor prior to the May 15 deadline. Debtor did not send the May 4, 2023 Order or any other notices or filings from this case to Movant, thereby ostensibly failing to comply with this Court's Order, Doc. 203, and providing cause for dismissal.

## II. In the Alternative, Movant Requests Relief from the Stay under Section 362(d)

32. Alternatively, the automatic stay in the Debtor's bankruptcy case should be lifted to allow Movant to prosecute its RICO Case, including immediate service on Debtor, at least to a determination of liability, even if collection of any judgment remains stayed until further order of this Court.

33. The protection of the automatic stay is not absolute. *In re Milne*, 185 B.R. 280, 283 (Bankr. N.D.Ill. 1995). "[A] bankruptcy court is one of equity, . . . [and] a person who seeks the protection of equity must do equity." *In re Thomas*, 204 F.2d 788, 794 (7th Cir. 1953). Like Section 1112(b), Section 362(d) of the Bankruptcy Code provides that, "[o]n request of a party

and after notice and a hearing, the court shall grant relief from the stay…such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." 11 U.S.C. § 362(d)(1).

34. "Cause" is a "broad and flexible concept", *see, e.g., Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018), *quoting In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013), and whether cause exists to warrant relief from the stay is examined on a case-by-case basis. *In re Milne*, 185 B.R. at 283. Factors generally considered in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay. *Id*. "Cause" also exists if there is not a reasonable likelihood that the debtor can propose a confirmable plan based on his disclosed income and projected plan payments. *See, e.g., In re Okrepka*, 533 B.R. 327, 337 (Bankr. D.Kansas 2015).

35. More specifically, relief from the automatic stay has been granted for creditors to pursue RICO actions to a determination of liability and damages, especially when they involve defendants other than the debtor and jury demands. *See Barnett v. Stern*, 909 F.2d 973, 975 (7th Cir. 1990); *see also, e.g., In re Hoffman*, 33 B.R. 937, 941-42 (Bankr. W.D.Okla. 1983) ("Owing to the presence of co-defendants, over whom this Court has no jurisdiction, we are of the opinion that causing the Plaintiffs to proceed once against [debtor] in a bankruptcy proceeding and then against [debtor] and the co-defendants in District Court would result in an even greater prejudice to the Plaintiffs. . . By modifying the stay, we are not abdicating our duty to determine the dischargeability of the debt. Rather, we are deferring that determination until the District Court determines liability."); *In re Turner*, 55 B.R. 498, 501-02 (Bankr. N.D.Ohio 1985).

36. For the reasons set forth above, the automatic stay should be lifted for cause based

on the Debtors' lack of good faith in commencing this bankruptcy case, his ongoing use of the automatic stay for tactical reasons only, and his inability to reorganize or propose a confirmable plan. Moreover, Movant is seeking to pursue a RICO Case against Debtor *and nine other parties* that are not subject to this Court's jurisdiction, Exh. 2, and the RICO Case debt is arguably non-dischargeable pursuant to 11 U.S.C. 523(a)(3)(B), as detailed in Movant's simultaneously filed Adversary Complaint.

37.     Notably, the RICO Case is premised on a series of fraudulent wire transfers initiated by Debtor in breach of his fiduciary duties as a director, Exh. 3, which is a far cry from the equitable conduct the automatic stay was meant to protect. Permitting the automatic stay to remain in place serves no reorganizational purpose but only results in detriment to Movant, whose interests would be better served by permissive pursuit of the RICO Case. Therefore, the hardship to Movant by continuance of the stay outweighs any hardship to the Debtor by a modification of the stay. Sufficient cause exists for the Court to modify the automatic stay to allow Movant to proceed with the RICO Case, including immediate service on Debtor – or, at a minimum, to pursue the RICO Case to a determination of liability and damages only, with any collection of judgment against Debtor stayed until further order of this Court.

WHEREFORE, for all of the reasons set forth herein, party in interest MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, respectfully requests that this Honorable Court enter an order: (i) dismissing the above-captioned bankruptcy case filed by JOSEPH C. SHEEHAN, or, alternatively, (ii) modifying the automatic stay imposed in the above-captioned bankruptcy case to allow Movant to immediately serve Debtor with process and prosecute Case No. 2023 CV 936 in the U.S. District Court for the Northern District of Illinois, and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

MYLES KIRBY, Liquidator, o/b/o BLACKROCK MEDICAL PARTNERS LIMITED, a corporation of the Republic of Ireland, Movant

BY: */s/ Melinda L. Mannlein*
One of its attorneys

Melinda L. Mannlein – ARDC No. 6288382
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614
Phone: (309) 688-9400
Fax:    (309) 688-9430
Email: mmannlein@hrbklaw.com
         aswearingen@hrbklaw.com